IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00769-WJM-KAS

JIMMY LEE GARCIA,

      Plaintiff,

v.

CITY OF MONTE VISTA, COLORADO, *et al.*

      Defendants.

---

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S
ORDER [ECF #100] DISMISSING WITH PREJUDICE PLAINTIFF'S
*MONELL* FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE THEORY[1]**

---

Plaintiff Jimmy Lee Garcia, by and through his attorneys, respectfully moves this Court to reconsider the discrete portion of its May 29, 2026 Order on Defendants' Motions to Dismiss, [ECF #100], that dismissed with prejudice Plaintiff's *Monell* claim against the City of Monte Vista to the extent it is predicated on the City's failure to train. In support, Plaintiff states as follows:

1. **INTRODUCTION**

Jimmy Lee Garcia suffered a tragedy when his girlfriend, Jacqueline Jones, died by suicide in their home on March 26, 2014. That tragedy turned into a nearly decade-long quest by the Monte Vista Police Department ("MVPD") to pin Ms. Jones' death on Plaintiff at the urging of Ms. Jones' powerful family, notwithstanding the objective evidence of his innocence.

---

[1] Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel conferred with counsel for Defendants regarding the relief sought in this Motion. The Monte Vista Defendants oppose the relief requested. Defendants Willett, Hunzeker, Richard Eikelenboom and Selma Eikelenboom-Shieveld take no position on this motion.

1

To accomplish its goal of ensuring that Plaintiff was prosecuted for a crime he did not commit, the MVPD, through its Chief of Police Defendant John Rosecrans, handed the case to an officer, Defendant Michael Martinez, who was in his early twenties, had never led a homicide investigation, had never been involved in a homicide or cold case investigation, and had never received a single day of training from MVPD on how to conduct an investigation. The only training that Defendant Martinez had on conducting investigations was the basic training he received in the police academy. MVPD not only gave Defendant Martinez zero training; it also gave him almost no supervision. MVPD likewise provided no training on how to conduct a homicide or cold case investigation to Defendant Martinez's lone supervisor, Defendant Rosecrans. Defendant Rosecrans was wholly unaware that Defendant Martinez had not recorded witness interviews and failed to document key pieces of evidence during the investigation, and, importantly, never disciplined him for failing to do so or for any of his actions during the investigation of Plaintiff.

Plaintiff learned all of this information during the depositions of Defendants Martinez and Rosecrans during the last week of April of 2026. Prior to that, Plaintiff had no way to know that Monte Vista's training and supervision was non-existent, despite having a good faith basis to believe that Monte Vista had failed to train, supervise, and discipline Defendants given the baseless prosecution that had been initiated against him, as alleged in the operative Complaint.

A month after those depositions, and two weeks after Plaintiff received the transcripts of them, this Court dismissed Plaintiff's failure to train theory of *Monell* liability with prejudice in its May 29, 2026 Order on Defendants' Motions to Dismiss, [ECF #100]. The Court did not hold that Plaintiff failed to plausibly allege a failure to train, supervise, and discipline theory. It held only that he "failed to address any *Monell* theory of liability based on the City's alleged failure to train or supervise MVPD officers in his response[.]" [ECF #100], pp. 27–28 (citing *C1.G ex rel.*

*C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022)).[2] It then dismissed Plaintiff's *Monell* claim as to his failure to train, supervise, and discipline theory with prejudice, without leave to amend. *Id.* at 55.

There are three strong bases for the Court to reconsider its decision to dismiss Plaintiff's *Monell* claim as to his failure to train, supervise, and discipline theory with prejudice and, instead, amend the decision to a dismissal without prejudice, allowing Plaintiff to amend his Complaint based on the evidence he has now learned through the benefit of discovery. First, newly discovered evidence (not available at the time of the submission of the amended complaint or the briefing on the motion to dismiss) shows that the failure to train, supervise, and discipline theory is meritorious. Second, the law dictates that dismissal of Plaintiff's failure to train, supervise, and discipline theory should have been without prejudice. Third, reconsidering the ruling would prevent manifest injustice to Plaintiff who has facts that support the failure to train theory now that depositions have been taken in this matter.

Ultimately, Plaintiff only asks that the Court to convert the dismissal of his failure to train, supervise, and discipline theory from one *with* prejudice to one *without* prejudice, so that he may replead it in the final amended complaint the Court has currently authorized him to file by June 30, 2026.

## 2. LEGAL STANDARD

"While the Federal Rules of Civil Procedure do not directly provide for a motion to reconsider an interlocutory ruling, district courts have broad discretion to reconsider their

---

[2] Counsel candidly acknowledges that the theory was not fulsomely briefed given that, at the time, Plaintiff did not have strong allegations that a failure to train, supervise, and discipline by Monte Vista caused the violation of Plaintiff's constitutional rights. Instead, Plaintiff focused his briefing on the other theories of relief, which were stronger. Now, with the benefit of discovery, Plaintiff is able to set forth a stronger claim.

interlocutory rulings before the entry of judgment." *Mantooth v. Bavaria Inn Rest., Inc.*, 360 F. Supp. 3d 1164, 1168-69 (D. Colo. 2019) (citing *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011); Fed. R. Civ. P. 54(b)). Under this standard, "a court can alter its interlocutory orders even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e) or a motion for relief from judgment brought pursuant to Rule 60(b) are not satisfied." *Id.* Generally, "'to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (quoting *California v. Summer Del Caribe, Inc.*, 821 F. Supp. 574, 578 (N.D. Cal 1993)). Motions for reconsideration are appropriate where the moving party shows newly discovered evidence or the need to correct clear error or manifest injustice. *Mantooth*, 360 F. Supp. 3d at 1168-69 (holding that "[t]he Court may be guided by Rules 59 and 60 standards in deciding whether to alter or vacate an interlocutory order").

3. **ARGUMENT**

   3.1 **Plaintiff is now able to state a meritorious *Monell* claim under a failure to train, supervise, and discipline theory due to newly discovered evidence.**

Reconsideration is warranted here because Plaintiff has newly discovered evidence that makes him able to state a strong and meritorious failure to train, supervise, and discipline claim. To state a claim for failure to train, supervise, and discipline, Plaintiff must allege that: (1) "the officers exceeded constitutional limitations"; (2) the constitutional violation "arose under circumstances that constitute a usual and recurring situation with which police officers must deal"; (3) the inadequate training, supervision, and/or discipline "demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact"; and (4) "there is a direct causal link between the constitutional deprivation and the inadequate" training,

supervision, and/or discipline.[3] *Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997) (citing

*Zuchel v. City and County of Denver*, 997 F.2d 730, 734-35 (10th Cir. 1993)). The Supreme Court

has long recognized that a single incident can establish deliberate indifference where the

constitutional injury is a "highly predictable consequence of a failure to equip law enforcement

officers with specific tools to handle recurring situations." *Bd. of Cnty. Comm'rs of Bryan Cnty. v.

Brown*, 520 U.S. 397, 409 (1997).

Here, the newly discovered evidence demonstrates that Plaintiff can now fulsomely allege

every element of a failure to train, supervise claim, and discipline claim. First, this Court has

already found that Plaintiff has adequately alleged a violation of his constitutional rights by

Defendant Monte Vista officials. *See* [ECF #100] , pp. 13-24.

And, the newly discovered evidence demonstrates that the training provided by MVPD was

clearly deficient. Defendant Martinez was the corporal that Defendant Rosecrans "promoted" and

"assigned . . . to renew the investigation into the death of Ms. Jones." [ECF #100], p. 31. Defendant

Martinez testified, without equivocation, that the Jones case was the first homicide investigation

of his career:

> Q  Prior to the investigation with Ms. Jones, how many homicide
>    investigations had you led?
> A  None.
> Q  How many homicide investigations had you been involved in?
> A  None.
> Q  So it was your first investigation, right?
> A  Yes.

**Exhibit 1**, *Defendant Martinez Deposition Transcript*, at 24:23–25:5. In his own words, he "had

never investigated a case" of this kind "before." *Id.* at 52:5–7. Further, Defendant Martinez

---

[3] "Allegations of inadequate discipline and/or supervision are treated as failures to train. . ." *Estate of Reat v. Rodriguez*, 2014 U.S. Dist. LEXIS 122500, at *2 n.4 (D. Colo. Sept. 3, 2014).

admitted he had never "received training in determining whether someone died by suicide or homicide[.]" **Ex. 1**, at 23:17–20. He confirmed he had "never received any training … for looking at a body or looking at a person and determining whether they died by suicide or homicide." *Id.* at 23:21–25. The only training he ever received on investigations was "[b]asic training" from a police academy, *id.* at 25:6–11, 30:4-6, delivered by "[a] different organization," not by the MVPD, *id.* at 30:24–31:5. On the dispositive point he was unambiguous:

> Q  So you didn't receive any training from Monte Vista on investigations, correct?
> A  Not at that time. No.

**Ex. 1**, at 31:3–5. He also received no training on "working with civilian forensic experts," *id.* at 30:1–3. Notably, years into the reinvestigation, Defendant Martinez testified that the MVPD was still "not in a position … to train me how to conduct an investigation like this." *Id.* at 70:3–13. Defendant Rosecrans, who, as Chief, was "ultimately responsible to make sure that officers and investigators received adequate training[.]" **Exhibit 2**, *Defendant Rosecrans Deposition Transcript*, at 65:1–7. Defendant Rosecrans testified that he was "fairly certain" the MVPD "didn't send anybody" for cold-case training. *Id.* at 58:12–24. Asked directly about Defendant Martinez's testimony that he never received homicide investigation training, Defendant Rosecrans did not dispute it. *See id.* at 55:23–56:2.

Further, the newly discovered evidence demonstrates that MVPD provided wholly deficient supervision. Defendant Rosecrans was Defendant Martinez's only supervisor, and he had never had "any advanced investigation training relating to homicides" or suicides, *Id.*, at 52:4–14; had "never been trained to be a detective," *id.* at 53:14–16; and had no "formal training at all on distinguishing suicide from homicide," *id.* at 56:8–10. He had never "supervised or managed a cold case investigation" before the Jones reinvestigation, had never "received any training on

investigating cold cases[.]" **Ex. 2**, at 58:15–18. Defendant Rosecrans's lack of experience as a supervisor or training qualifying him to be one on a cold case homicide investigation played out in various ways, but was most obvious in that Defendant Martinez never recorded a number of material witness interviews, either in writing or on body-worn camera. *Id.* at 70:24-71:19, 265:7-13. Defendant Rosecrans never disciplined him for that, and did not even know that he had failed to do so. *Id.* These newly discovered facts support that Plaintiff can state a failure to train, supervise, and discipline claim.

Second, the newly discovered evidence demonstrates that the violation of Plaintiff's constitutional rights "arose under circumstances that constitute a usual and recurring situation with which police officers must deal[.]" *Allen*, 119 F.3d at 841-42. Rosecrans agreed that homicide investigations are something officers "will encounter . . . as part of their normal duties," and that they are among the events that officers "have to be prepared for[.]" **Ex. 2**, at 65:11–24.

Third, the newly discovered evidence demonstrates that the inadequate supervision and discipline "demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact." *Allen*, 119 F.3d at 841-42. Defendant Rosecrans admitted he provided no training to Defendant Martinez, or any other officer investigating homicides in his department, despite knowing that it would "be important for officers to be trained in how to conduct investigations into homicides[.]" **Ex. 2**, at 66:4–18. The final policymaker for Defendant Monte Vista thus knew that a homicide investigation was a foreseeable, high-stakes part of the job, and knew it was important to train officers for exactly that task, yet provided no such training to the lone officer he assigned to lead one. This is textbook deliberate indifference.

Finally, the newly discovered evidence demonstrates a "direct causal link between the constitutional deprivation and the inadequate" training, supervision, and/or discipline. Defendant

Rosecrans assigned an officer in his early twenties (between 22 and 23), **Ex. 1**, at 60:16-21, who had no experience with homicide investigations, *id.* at 24:23–25, and no training on homicide investigations outside of the basic training provided at the academy, *id.* at 25:6–11, to work a high-stakes cold case investigation that multiple agencies (including the Colorado Bureau of Investigations and the El Paso County Coroner's Office) had ruled a suicide. It is clear that this lack of training led Defendant Martinez to conduct an investigation geared from the beginning to prosecute Plaintiff; absent any training, Defendant Martinez predictably failed to properly investigate; retained experts whose conclusions were unsupported; and authored an arrest affidavit that omitted significant exculpatory information in order to reach MVPD's intended result. This failure to train, supervise, and discipline caused the violation of Plaintiff's constitutional rights.

### 3.2 <u>Plaintiff could not have pled these facts earlier because the training information was within the City's exclusive possession and emerged only in discovery.</u>

Reconsideration on the grounds of newly available evidence is well established. *See Mantooth*, 360 F. Supp. 3d at 1169. The facts establishing the failure to train, supervise, and discipline theory were not available to Plaintiff when he filed his complaint, when he amended it, or when the Monte Vista Defendants' motion to dismiss was briefed.

A plaintiff cannot know, at the pleading stage, the contents of a police department's training records or the sworn admissions its officers will make about the training they were (or in this case were not) provided. Public records requests seeking these documents are routinely denied and plaintiffs' counsel are not entitled to talk to adverse represented parties. In this case, Plaintiff learned these facts only when Defendants Martinez and Rosecrans testified under oath on April 28 and April 30, 2026. This testimony occurred after Plaintiff filed the First Amended Complaint, [ECF #33]; after he filed the Second Amended Complaint, [ECF #70]; and after the motion to dismiss was fully briefed. [ECF #73].

Prior to the depositions, it was unclear whether Defendant Monte Vista provided any training. When Plaintiff's counsel asked Defendant Rosecrans about the Department's training records at his deposition, counsel noted that the defense had produced no record of any such training, and Monte Vista's counsel represented that Monte Vista had "sent . . . over everything we had about training." **Ex. 2**, at 55:15–21. In other words, it was unclear until confirmed under oath that training was never provided. Plaintiff could not have alleged the specifics of Monte Vista's training failures before discovery laid them bare, and it would be manifestly unjust to fault him for omitting from his complaint facts that only Monte Vista possessed.

This is precisely the circumstance in which Rule 15's command that leave to amend be "freely give[n] . . . when justice so requires" has its fullest force. Fed. R. Civ. P. 15(a)(2). A plaintiff who learns, through discovery, of facts that strengthen a claim is ordinarily permitted to amend to include them. There is no undue delay, bad faith, or dilatory motive here; Plaintiff seeks to add facts that became available barely a month before the Order and that he could not have pleaded sooner. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

### 3.3 <u>Legal authority dictates that Plaintiff's failure to train, supervise, and discipline theory should have been dismissed without prejudice.</u>

"[D]ismissal with prejudice is a harsh remedy not to be employed indiscriminantly." *Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 232 (6th Cir. 1983) (citing *Gonzalez v. Firestone Tire and Rubber Co.*, 610 F.2d 241, 247 (5th Cir. 1980); *Reizakis v. Loy*, 490 F.2d 1132 (4th Cir. 1974)); *AdvantEdge Bus. Grp., L.L.C. v. Thomas E. Mestmaker & Assocs.*, 552 F.3d 1233, 1236 (10th Cir. 2009) (holding that "[a] dismissal with prejudice [] is a harsh remedy, and the district court should ordinarily first consider certain criteria" in the context of considering a sanction for failure to prosecute a claim). "'If it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court

9

should dismiss with leave to amend.'" *Reynoldson v. Shillinger*, 907 F.2d 124, 126–27 (10th Cir. 1990) (quoting 6 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure, Civil 2d § 1483 (West 1990)).

The Court did not dismiss Plaintiff's failure to train, supervise, and discipline theory based on a merits determination that the claim cannot be stated. [ECF #100], pp. 27–28. Importantly, the Court found three *Monell* theories inadequately pleaded: informal custom, ratification of the arrest affidavit, and failure to train, supervise, and discipline. [ECF #100], p. 24–32. It dismissed the informal-custom and ratification theories *without* prejudice, and granted Plaintiff leave to file a "further, and FINAL, amended complaint by no later than June 30, 2026," as to those claims. *Id.* at 55–56. Only the failure to train, supervise, and discipline theory was singled out for a with-prejudice dismissal. *Id.* at 55. Correcting this inconsistency is exactly what reconsideration is meant to do.

### 3.4 Foreclosing the failure to train, supervise, and discipline theory would cause Plaintiff manifest injustice and allowing him to amend his complaint to more fulsomely allege this theory is in the interest of justice.

This Court has previously held that a motion for reconsideration is properly granted when reconsideration "is in the interest of justice" and would allow for the resolution of claims "on the merits[.]" *Mantooth*, 360 F. Supp. 3d at 1175. The Court's ruling dismissing Plaintiff's failure to train, supervise, and discipline theory with prejudice permanently extinguishes a viable, record-supported theory of liability against Defendant Monte Vista. The consequence is that an innocent man who spent weeks in jail and three years under the specter of life imprisonment would lose an avenue to hold Defendant Monte Vista accountable for the very failure that produced the violation of his constitutional rights, even though the evidence supporting that theory has borne out in discovery.

By contrast, the relief Plaintiff seeks imposes no cognizable prejudice on Defendants. The Court has already ordered that a final amended complaint may be filed by June 30, 2026, to replead the *Monell* theories dismissed without prejudice. [ECF #100], pp. 55–56. Allowing Plaintiff to include the failure to train, supervise, and discipline theory in that same pleading adds no new deadline and requires no additional round of motion practice. The supporting evidence comes from depositions Defendants' counsel attended and defended; there is no unfair surprise. Litigating the failure to train, supervise, and discipline theory alongside the closely related *Monell* theories the Court has already permitted to be repleaded and allowed to proceed serves judicial economy and avoids piecemeal adjudication through post-trial briefing.

In short, Plaintiff asks only that the Court dismiss his failure to train, supervise, and discipline theory *without* prejudice and allow one final, properly supported opportunity to plead it.

4. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its May 29, 2026 Order, [ECF #100], p. 55; vacate the dismissal with prejudice of his *Monell* failure to train, supervise, and discipline theory; dismiss that theory without prejudice instead; and grant him leave to replead the failure to train, supervise, and discipline theory in the final amended complaint currently due June 30, 2026.

Respectfully submitted this 9th day of June, 2026.

NEWMAN | MCNULTY

*s/ Andy McNulty*
Mari Newman
Andy McNulty
Madeline Leibin
1490 N. Lafayette Street, Suite 304
Denver, CO 80218
(720) 850-5770
andy@newman-mcnulty.com

11

mari@newman-mcnulty.com
madeline@newman-mcnulty.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

NEWMAN | MCNULTY

*s/ Andy McNulty*
Andy McNulty